IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SHARON DAVIS and MICAH DAVIS, | § § § | |
| Plaintiffs | § § | |
| vs. | § § | NO. 5:19-CV-503 |
| UNITED STATES OF AMERICA, | § § § | |
| Defendant | § § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs Sharon Davis and Micah Davis bring this complaint under the Federal Tort Claims Act, 28 U.S.C. § 2674. Plaintiffs complain of the United States of America and would respectfully show the following:

### I. PARTIES

**1.1.** This is a medical malpractice case.

**1.2.** Plaintiffs Sharon Davis and Micah Davis reside in San Antonio, Texas, within the jurisdiction of this Court.

**1.3.** The Defendant is the United States of America, it's officers, agents, employees, and representatives.

## II. JURISDICTION, SERVICE & VENUE

**2.1.**    This Federal District Court has jurisdiction because this action is brought

pursuant to and in compliance with 28 U.S.C. §§ 1346(b), 2671–80, commonly known

as the Federal Tort Claims Act, which vests exclusive subject-matter jurisdiction of

the Federal Tort Claims Act in Federal District Court.

**2.2.**    The United States of America may be served with process in accordance

with Rule 4(i) of the Federal Rules of Civil Procedure by serving a copy of the

Summons and Complaint on the United States Attorney John Bash, United States

Attorney for the Western District of Texas by certified mail, return receipt requested

at his office:

> United States Attorney's Office
> ATTN: Civil Process Clerk
> 601 NW Loop 410,
> Suite 600
> San Antonio, Texas 78216

**2.3.**    Service is also affected by serving a copy of the Summons and Complaint on

William Barr, Attorney General of the United States, by certified mail, return receipt

requested at:

> The Attorney General's Office
> ATTN: Civil Process Clerk
> U.S. Department of Justice
> 950 Pennsylvania Avenue, NW
> Washington, DC 20530-0001

**2.4.**    Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(1)(B)

because the United States is a Defendant and a substantial part of the events or

omissions giving rise to the claims occurred in this judicial district.

## III. LIABILITY OF THE UNITED STATES

**3.1.**    This case is commenced and prosecuted against the United States of America to and in compliance with Title 28 U.S.C. §§ 2671–80, the Federal Tort Claims Act. Liability of the United States is predicated specifically on 28 U.S.C. § 2674 because the personal injuries and resulting damages of which the complaint is made were proximately caused by the negligence, wrongful acts, and/or omissions of employees and/or agents of the United States of America working at Brooke Army Medical Center in San Antonio, Texas, while acting within the scope of their office, employment, and/or agency under circumstances where the United States of America, if a private person, would be liable to the Plaintiffs in the same manner and to the same extent as a private individual.

**3.2.**    The substantive law of the State of Texas applies to this lawsuit.

**3.3.**    The Department of the Army is a Department of the United States of America.

**3.4.**    The Defendant United States of America, through its Department, the Department of the Army, at all material times owned, operated, and controlled Brooke Army Medical Center in San Antonio, Texas, and staffed its facilities with its agents, servants, and employees.

**3.5.**    At all material times, all persons involved in the medical and health care services provided to Plaintiff Sharon Davis at Brooke Army Medical Center in San Antonio, Texas were agents, servants, and/or employees of the United States

Department of the Army, the United States of America, or some agency thereof, and were at all material times acting within the course and scope of such employment.

## IV. JURISDICTIONAL PREREQUISITES

**4.1.**     Plaintiffs plead pursuant to 28 U.S.C. §§ 2672 and 2675(a) that the claims set forth have met all jurisdictional prerequisites, including timely administrative presentment. The claims set forth in this complaint were delivered to the U.S. Army Claims Service and Brooke Army Medical Center on October 3, 2016. Receipt of the claims was acknowledged by the Department of the Army on November 8, 2016. The Department of the Army on January 28, 2019, issued a written final denial of the claims set forth in this lawsuit. This lawsuit was filed in the Western District of Texas within six months after the date of mailing of the final denial notice. Accordingly, all claims have been denied and Plaintiffs have complied with all jurisdictional prerequisites and conditions prior to the commencement and prosecution of this suit.

**4.2.**     Each Plaintiff's Form 95 administratively presented to the United States stated a "sum certain" of five million dollars ($5,000,000.00).

## V. FACTS

**5.1.**     This is a case for monetary damages sustained by Plaintiffs arising out of the personal injuries to Sharon Davis as a result of substandard—and therefore negligent—medical and hospital care, including but not limited to failing to protect

Mrs. Davis' saphenous and peroneal nerves from injury during right knee arthroscopy and meniscus repair;  failing to properly position Mrs. Davis' knee intraoperatively; improper surgical technique; failing to properly place sutures near the saphenous nerve branch; and failing to timely recognize and intervene post-op for entrapment of the saphenous nerve branch and common peroneal nerve, which led to the need for multiple surgeries that more likely than not, would not have been necessary if the initial nerve injury had been timely diagnosed and managed.

5.2.    Before 2015 and early 2016, Sharon Davis did not walk with a limp, had suffered no injury to her saphenous and peroneal nerves, and did not have any corresponding problems with pain and numbness.

5.3.    Leading up to September 2016, Mrs. Davis had a history of chronic right knee pain and intermittent locking. On or around September 3, 2016, Mrs. Davis felt a sharp pop in her right knee, followed by severe pain, edema, and inability to fully flex or extend her right leg. She was able to bear weight, but her knee felt unstable. She presented to the Emergency Department at Brooke Army Medical Center ("BAMC") in San Antonio, Texas the next day, then underwent an MRI the following afternoon. The MRI revealed a bucket-handle tear of the medial meniscus, osteoarthritis of the patellofemoral joint, 4.4x8mm partial thickness chondral defect in the weight-bearing surface of the lateral femoral condyle, and a bone cyst or enchondroma of the lateral femoral condyle.

5.4.    Right knee arthroscopy with meniscal repair was recommended by Dr. Ross A. Schumer at an orthopedics follow-up appointment on September 25, 2015, and

Mrs. Davis agreed to the procedure. Dr. Schumer performed right knee arthroscopy with inside-out medial meniscus repair, lateral femoral condyle microfracture, and debridement of the chondromalacia on September 29, 2015. Intraoperative diagnoses included: a displaced bucket handle tear of the right medial meniscus, 10x18mm full thickness osteochondral lesion of the lateral femoral condyle, and severe diffuse Grade II chondromalacia of the patella.

**5.5.**    Although the procedure improved Mrs. Davis' chronic right knee pain, she reported new numbness and hypersensitivity over her right knee and onto her lateral proximal tibia at an October 15, 2015, follow-up appointment. Dr. Genevieve Rambau, in consultation with Dr. Schumer, wrote that the hypersensitivity was likely secondary to Mrs. Davis' neuropraxia and advised her that the sensitivity would likely improve, and to begin desensitization and daily scar massage.

**5.6.**    On October 21, 2015, Dr. Schumer wrote that he personally evaluated Mrs. Davis and found hypersensitivity in the infrapatellar branch of the saphenous nerve.

**5.7.**    By November 5, 2015, Mrs. Davis reported some sensitivity improvement, but she still was not weight-bearing.

**5.8.**    By December 17, 2015, Mrs. Davis' condition had significantly worsened. At an orthopedics appointment on that date, her providers charted continued paresthesia in the distribution of the infrapatellar branch of the saphenous nerve, with hyper- and hypoesthesia in the distribution further limiting her physical therapy progress. Procedures to transect the affected nerve(s) were discussed, as we

as a pain management referral for potential localized block of the central nerve causing her symptoms.

5.9.    On January 7, 2016, Mrs. Davis reported a tense tightness and locking at the inferior aspect of her knee behind the patellar tendon during range of motion exercises, with some hypersensitivity in the infrapatellar branch of the saphenous nerve. Her medical providers expressed concerns about displacement and repeat or recurrent tear(s) and advised her to get another MRI to evaluate the meniscal repair.

5.10.    An MRI performed on February 6, 2016, revealed a persistent oblique linear T2 signal abnormality in the posterior horn and a new, more vertically-oriented T2 signal abnormality at the posterior body horn junction, possibly indicating post-surgical changes and/or a recurrent tear. Despite these findings, U.S. Government medical providers reassured Mrs. Davis that the MRI result was "fine" and did not tell her about the possible new tear. Unsatisfied, Mrs. Davis asked for a second opinion and was referred to Dr. Christopher Phelps for further evaluation.

5.11.    Dr. Phelps reviewed the same February 6, 2016 MRI but disagreed with the conclusion of government orthopedic providers. He believed the imaging showed an obvious unstable tear of the medial meniscus and opined that the suture fixation was clearly unsuccessful. He opposed pain management, which would at best only dull her pain, and recommended repeat arthroscopic surgery, excision of the unstable meniscus, removal of the blown sutures, exploration of the medial wound, and hopefully release of the incarcerated nerve.

**5.12.**   On April 12, 2016, Dr. Dionisio Ortiz and Dr. Travis Burns performed a diagnostic arthroscopy, which revealed significant grade 3 and 4 patellofemoral arthrosis with grade 2-3 medial compartment arthrosis and grade 1-2 lateral compartment arthrosis. Arthrosis of the knee is typically caused by cartilage wear from malalignment of the leg axes (in-knee or out-knee), resulting in stiffness and joint deformation. Repair devices were applied to tears and selective debridement, chondroplasties, and bone marrow aspiration were performed.

**5.13.**   Mrs. Davis' problems only worsened. She underwent a saphenous nerve block on the right side on June 3, 2016, but her pain—described as dull, tingling, and numb, exacerbated by walking and partially alleviated by resting—persisted. On examination, hyperpathia and Allodynia of the skin distal to the right knee in a saphenous nerve distribution were noted. Mrs. Davis expressed exquisite tenderness to the infrapatellar and lateral portions of her right knee with her most severe pain in the common peroneal nerve root distribution and the infrapatellar branch of the saphenous nerve on the right. A right common peroneal nerve block was performed under ultrasound guidance on June 15, 2016.

**5.14.**   Mrs. Davis suffered saphenous nerve damage resulting in permanent injury due to the negligence of U.S. Government providers. U.S. Government health care provider Dr. Ross Schumer negligently performed Mrs. Davis's September 29, 2015 right knee arthroscopy. More likely than not, proper surgical technique would have avoided any injury to the infrapatellar branch of the saphenous nerve. Failing to protect the saphenous and common peroneal nerves during right knee arthroscopy

8

with meniscus repair is a breach of the standard of care. Mrs. Davis's injury to the infrapatellar branch of the saphenous nerve was proximately caused by substandard surgical technique that fell below the standard of care.

5.15.    In addition, government providers failed to timely intervene post-op for entrapment of the saphenous nerve branch and common peroneal nerve, proximately causing permanent damage to the infrapatellar position of both nerves. Dr. Schumer's failure to explore the wound for the presence of a tethered nerve branch was also a breach of the standard of care.

5.16.    The negligently-performed right knee arthroscopy proximately caused Mrs. Davis' current condition. Had the first procedure in 2015 been performed correctly, more likely than not, the revision right knee arthroscopy would not have been required in 2016. Mrs. Davis's injury was mismanaged, misdiagnosed, and she was not timely offered revision surgery.

5.17.    Even after undergoing revision surgery, Mrs. Davis still endures severe chronic pain. Mrs. Davis' injuries affected her work resulting in lost job opportunities and lost income. Her pain and nerve damage is in all likelihood, permanent. Had Mrs. Davis been appropriately and timely treated, more likely than not she would not have to endure a permanent nerve injury.

## VI. CAUSES OF ACTION

6.1.    The Defendant, the United States of America, was negligent in one or more of the following respects:

9

1.      In failing to timely and properly treat Sharon Davis;

2.      In failing to timely and properly care for Sharon Davis;

3.      In failing to timely and properly perform meniscal repair surgery on Sharon Davis;

4.      In failing to timely and properly diagnose Sharon Davis;

5.      In failing to timely and properly evaluate Sharon Davis;

6.      In failing to timely and properly monitor Sharon Davis;

7.      In failing to timely and properly assess Sharon Davis' medical needs;

8.      In failing to timely and properly protect Mrs. Davis' saphenous and common peroneal nerves during the September 29, 2015, right knee arthroscopy.

9.      In failing to properly position Mrs. Davis' knee intraoperatively;

10.     In failing to properly place sutures near the saphenous nerve branch; and

11.     In failing to timely diagnose and intervene post-op for entrapment of the saphenous nerve branch and common peroneal nerves.

**6.2.**    At all material times, the employees, agents, or representatives of the United States of America were negligent and caused the injuries sustained by the Plaintiffs.

## VII. DAMAGES

**7.1.**    As a proximate result of the Defendant's negligent acts or omissions, Plaintiffs suffered injuries, which would not have otherwise occurred. Plaintiff

10

Sharon Davis pleads for all damages available under Texas state law, federal law, and equity including, but not limited to:

1.     Past and future physical pain and suffering;

2.     Past and future mental anguish;

3.     Past and future suffering, humiliation and emotional distress;

4.     Past and future physical impairment and disability;

5.     Past and future physical disfigurement;

6.     Past and future loss of income and impairment of earning capacity;

7.     Past and future reasonable value of the loss of consortium with her husband, Micah Davis;

8.     Past and future medical, health, and attendant care expenses;

9.     Out-of-pocket expenses; and

10.    Other pecuniary damages.

**7.2.**    As a proximate result of the Defendant's negligent acts or omissions, Plaintiff Micah Davis individually suffered injuries, which would not have otherwise occurred. He pleads for all damages available under Texas state law, federal law and equity, including, but not limited to:

1.     Past and future attendant care;

2.     Past and future mental anguish;

3.     Past and future reasonable value of the loss of consortium with his wife, Sharon Davis;

11

4.      Past and future loss of household services;

5.      Out-of-pocket expenses; and

6.      Other pecuniary damages.

## CONCLUSION

Plaintiffs request that Defendant be cited to appear and answer herein: that upon final trial and hearing, Plaintiffs have a judgment against the Defendant for the amount of actual damages; and for such other and different amounts as they shall show by proper amendment before trial; for post-judgment interest at the applicable legal rate; for all Court costs incurred in this litigation; and for such other and further relief, at law and in equity, both general and special, to which the Plaintiffs may show themselves entitled to and to which the Court believes them deserving.

Respectfully Submitted,


/s/ Laurie Higginbotham
LAURIE HIGGINBOTHAM
lhigginbotham@nationaltriallaw.com
Texas State Bar Number:  50511759
TOM JACOB
tjacob@nationaltriallaw.com
Texas State Bar Number: 24069981
For Whitehurst, Harkness, Brees, Cheng, Alsaffar, Higginbotham & Jacob, PLLC
7500 Rialto Blvd., Bldg. Two, Ste. 250
Austin, Texas 78735

Attorneys for the Plaintiffs